COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Beales and Retired Judge Clements*
Argued at Richmond, Virginia


HENRY GARFIELD HOLLIE

                                                  MEMORANDUM OPINION** BY
v.         Record No. 1829-07-2                   JUDGE RANDOLPH A. BEALES
                                                        JANUARY 13, 2009
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Thomas N. Nance, Judge Designate

               Jessica M. Bulos (Office of the Public Defender, on briefs), for
               appellant.

               Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
               McDonnell, Attorney General, on brief), for appellee.


        Henry Garfield Hollie (appellant) was found guilty by the trial court of grand larceny,

pursuant to Code § 18.2-95, and of credit card theft, pursuant to Code § 18.2-192(1)(a).  On appeal,

he argues that the evidence was insufficient to prove beyond a reasonable doubt that he was the

perpetrator of these crimes.  He also contends that the evidence was insufficient to prove the intent

element of credit card theft, an argument he concedes he did not present to the trial court.  He asks

this Court to apply the ends of justice exception to Rule 5A:18 and, thus, to consider this argument.

We find that the evidence was sufficient to prove appellant committed these crimes, and we find the

ends of justice exception does not apply here.

---

        * Judge Clements participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2008, and thereafter by designation pursuant to
Code § 17.1-400(D).

        ** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

At about 2:30 a.m. on January 28, 2007, Leslie Gray, a long-time acquaintance of appellant, was at home asleep.  She was awakened by a telephone call from appellant, who asked her if he could stop by and pick up some of his things that were in Ms. Gray's car.  Although she was sick and it was very early in the morning, Ms. Gray told appellant that he could come by and get the items.

When appellant arrived at her door, he had an acquaintance with him, who stayed outside on the sidewalk.  Ms. Gray gave her car key to appellant, who then went to retrieve the items.  He then came back to her door, returned the key, and asked if he could use her bathroom.  Ms. Gray agreed and let appellant into her home.  She locked the door behind appellant and immediately went upstairs to straighten up the bathroom before appellant could use it.  Appellant followed her up the stairs and waited outside the bathroom in the hall while she put the bathroom in order.  Appellant was out of Ms. Gray's sight for approximately two to three minutes while she was in the bathroom.   When she was finished, appellant went into the bathroom, stayed there a few minutes, and then left the house.  Appellant's friend never came into the home, according to Ms. Gray.

When Ms. Gray woke up later that Sunday morning, she did not notice anything amiss.  On Monday, however, she noticed that her purse, which sat on the end of her bed all weekend, was no longer "secured," and her wallet, which had been inside her purse, was missing.  The bedroom was down the hall from the bathroom that appellant had used early on Sunday morning.  The purse was visible from the hallway where appellant had waited while Ms. Gray straightened up the bathroom.

Ms. Gray had seen her wallet on the previous Friday when she paid a bill after work.  She began feeling ill on Friday, so she went straight home after paying the bill, put the purse on the

edge of her bed, and left it there all weekend, as was her habit. The purse was closed and buckled when she placed it there, and it was still buckled on Saturday night. She also remembered seeing the items in her wallet late Saturday evening.

Inside the missing wallet was an ATM card, various credit cards, a checkbook, $30 in cash, and two Lowe's merchandise cards worth $300 each. Ms. Gray cancelled all the credit cards and closed the bank account early on Monday morning. She then tried to find appellant at the Salvation Army, where he lived, but could not find him.

No one other than Ms. Gray and appellant were in her home between Friday evening, when she placed the purse on the bed, and Monday morning, when she discovered that the wallet was missing.

At trial, appellant argued that the evidence was insufficient to prove he was the person who took the wallet. He did not argue that the evidence was insufficient to prove he intended to steal or use the credit cards in Ms. Gray's wallet, a possible element of credit card theft as defined in Code § 18.2-192(1)(a).[1] The trial court found the evidence was sufficient, convicted appellant of grand larceny and credit card theft, and sentenced him to six years, with two years suspended, on each conviction.

## II. ANALYSIS

### A. Criminal Agent

Although acknowledging that this Court must view the evidence produced at trial in the light most favorable to the Commonwealth, see Ford v. Commonwealth, 28 Va. App. 249, 259, 503

---

[1] Code § 18.2-192 defines credit card theft as when a person "takes, obtains or withholds a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent" or when a person "who, with knowledge that it has been so taken, obtained or withheld, receives the credit card or credit card number with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder." As we find appellant's intent argument was not preserved, we do not address whether this statutory language defines two separate offenses, one with a specific intent element and one without such an element.

S.E.2d 803, 807 (1998), appellant contends that evidence was still insufficient to prove he was the person who took Ms. Gray's wallet. We disagree. Although no one observed appellant take the wallet out of Ms. Gray's purse, the Commonwealth presented sufficient circumstantial evidence to prove appellant took the wallet.

When the Commonwealth's case is based on circumstantial evidence, the facts presented at trial must exclude "every reasonable hypothesis of innocence which flows from the evidence." Id. However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Here, there is no evidence that anyone other than appellant could have taken the wallet.

Ms. Gray testified that appellant was the only person, besides herself, to enter her home between the time she placed the purse on the bed on Friday, when the wallet was in it, and Monday morning, when she discovered the wallet was missing. When appellant entered the residence, Ms. Gray locked the door behind him, so no one else could enter the home. No evidence in the record suggests that anyone broke into Ms. Gray's home. Ms. Gray did not leave her house during that time, as she was sick, so she would have known if someone else had entered her home, gone upstairs, entered her bedroom, and taken the wallet from the purse at the end of her bed. Therefore, we find that the trial court did not err when it rejected appellant's hypotheses of innocence and found him guilty. See Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003) (noting that the issue on appeal, in cases involving convictions based on circumstantial evidence, "is whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [a defendant's] theories in his defense and found him guilty . . ."). The evidence here was sufficient for the trial court to find that appellant stole Ms. Gray's wallet.

B.  Intent to Commit Credit Card Theft

Appellant claims the Commonwealth did not prove that he took the credit cards "with [the] intent to use [them] or sell" them, Code § 18.2-192(1)(a), so the evidence was insufficient to convict him of credit card theft.  He admits that he did not present this argument to the trial court and concedes that he did not preserve this argument for appeal as required under Rule 5A:18.  However, appellant asks this Court to apply the ends of justice exception in Rule 5A:18, relying upon the Supreme Court's analysis in Jimenez v. Commonwealth, 241 Va. 244, 402 S.E.2d 678 (1991), where the Supreme Court found the ends of justice exception should apply.  The Commonwealth counters that Redman v. Commonwealth, 25 Va. App. 215, 487 S.E.2d 269 (1997), in which this Court found the ends of justice exception did not apply, controls here.  We agree with the Commonwealth that Redman is more applicable, given the posture of this case, and, therefore, we decline to apply the ends of justice exception here.

In Jimenez, the jury instructions did not include "a material element of the offense charged." 241 Va. at 251, 402 S.E.2d at 681.  In that case, the definition of fraud required that the Commonwealth prove a defendant had not returned the money advanced to him within fifteen days after receiving written notice, sent certified mail, of a request to return the money.  Id. at 247, 402 S.E.2d at 679.  However, at Jimenez's trial, the Commonwealth presented no evidence that the victims ever sent a notice to Jimenez, and the jury instructions did not list this notice as one of the elements of the crime.  Id.

This appeal presents our Court with a very different posture than the Supreme Court faced in Jimenez.  Here, a jury did not convict appellant, so jury instructions are not an issue here.  Trial courts are presumed to know the law and to follow it, Wilson v. Commonwealth, 23 Va. App. 318, 326, 477 S.E.2d 7, 10 (1996) ("[W]e assume that trial judges have knowledge of the Commonwealth's laws and properly apply those laws."), so in this case we must presume that the

- 5 -

trial court knew and considered all of the elements of credit card theft.  Therefore, based on this record, appellant was not "convicted of a non-offense," as Jimenez was.  Jimenez, 241 Va. at 251, 402 S.E.2d at 681.

In addition, although in Jimenez the Commonwealth presented no evidence that a notice was mailed, here the Commonwealth presented at least some circumstantial evidence that appellant intended to use, sell, or transfer the credit cards.[2]  The evidence here proved that appellant actually took the wallet containing the cards and that those cards were never returned to Ms. Gray – both facts that suggest appellant intended to take the cards and use, sell, or transfer them.[3]  Therefore, Jimenez is not applicable here.

Conversely, in Redman, this Court addressed the exact argument that appellant raises here. Redman argued in his appeal that the Commonwealth's evidence was insufficient for the trial court to convict him of being an accessory after the fact because the evidence failed to prove two elements of this crime, but he failed to preserve these arguments at trial.  25 Va. App. at 219-20, 487 S.E.2d at 271-72.  This Court found the ends of justice exception to Rule 5A:18 did not apply to Redman's appeal, explaining:

> In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth failed to prove an element of the offense.  We will not invoke the exception if the record suggests that the Commonwealth merely inadvertently or unknowingly failed to adduce adequate proof of an element of the offense.  In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record

---

[2] The Commonwealth does not argue on appeal that Code § 18.2-192(1)(a) defines two types of credit card fraud, one without this specific intent requirement.  As we find the issue was not preserved, we do not consider this question here.  See *supra* n.1.

[3] We only note here that the record did contain some evidence relevant to this issue, unlike the record in Jimenez.  We do not comment on whether this evidence was sufficient to prove beyond a reasonable doubt that appellant had the requisite intent to steal the credit cards.

must affirmatively prove that an element of the offense did not occur.

Id. at 221-22, 487 S.E.2d at 272-73. This Court then distinguished Redman's claim, which was based only on the failure of the Commonwealth to prove an element of the crime, from Jimenez, where the Supreme Court had applied the ends of justice exception to reach the merits of Jimenez's argument. Id. at 222, 487 S.E.2d at 273. This Court explained that Jimenez involved not only the Commonwealth's failure to present any evidence to prove an element of the crime, but also the failure of the jury instructions to include an essential element when defining fraud for the jury. Id. This Court then concluded that the ends of justice exception did not apply to Redman's argument. Id.

We find Redman controls in this appeal. Appellant does not argue that the conduct for which he was convicted was not a crime, and he does not contend that the record affirmatively proved he lacked the requisite intent to commit the crime. Instead, he argues that the evidence was insufficient to prove an element of the crime with which he was charged, basically the same argument that Redman made, although in relation to a different statute. Therefore, we find that the ends of justice exception to Rule 5A:18 does not apply here.

### III. CONCLUSION

We find the evidence was sufficient to prove appellant perpetrated the crimes for which he was convicted. We do not address appellant's argument regarding the sufficiency of the evidence to prove he intended to commit credit card theft, as this argument was not preserved pursuant to Rule 5A:18 and the ends of justice exception to that rule does not apply based on the record in this case. Therefore, for the foregoing reasons, we affirm appellant's convictions.

Affirmed.